THE STATE ex rel. BEEBE, Executor, &c.

*vs.*

SUPERVISORS OF LA FAYETTE COUNTY.

[In the statement of this case, it has not been deemed necessary or proper to give the statement of the whole case in full, as the application for the writ, and the alternative mandamus exhibited the same in detail.

The material point raised and decided in the case was, that the several officers employed by the government in levying the tax, the making of the assessments, &c., will be held to a reasonable conformity with the several provisions of the statute, in the performance of the duties enjoined upon them respectively.

And further that the Court will not countenance in any degree, any evasion of a full and complete compliance with the exigencies of its processes.

And, however onerous may be the exercise of the supervisatory control enjoined upon this Court by the Constitution, that power must be exercised upon all proper occasions ; and cannot be evaded.]

This was an application on behalf of the relator for a mandamus. On the 22d day of December, 1854, an alternative writ issued out of this court, commanding the respondents to " expunge from the assessment roll of the town of Shullsburgh, in said county of La Fayette, for the year A. D. 1855, the said assessment of real estate, to said William Hempstead, deceased, and also to expunge the said description of said real estate, as you, the said board, have been frequently requested to do by said Edward H. Beebe, or in default thereof you show cause," &c.

The alternative writ recited the irregularity of the June Term 1854.

The State vs. Sup. of La Fayette Co. assessment, alleging that some seven distinct parcels of land were described in the roll as parts of certain quarter sections, of section ten, town one, range two, with the number of acres in each parcel carried out, and varying from one half of an acre to forty-one acres, with no valuation to each parcel, but at the bottom, in the column of value, were set down $30,000. It also was recited that at the November session of the board, the relator, by his counsel, moved the board to expunge the said assessment from the roll, as it was impossible to correct the same, which said motion was denied.

The respondents showed for cause why they had not complied with the writ:

1st. For that no objection was made by said Beebe, executor, &c., to the sufficiency of the description at the time of the description and valuation by the assessor ; that his only objection was that the valuation was too high, &c.

2d. That the said real estate is described on the roll of 1854, the same as it has been several years prior thereto; and that William Hempstead, in his life time, always acquiesced in the description, and paid the taxes so designated without objection.

3d. That the said executor had caused a survey of the lands to be made, and had completed the same before the board refused to expunge, &c., and a committee of the board waited upon the agent of the relator, and requested of him a more minute and particular description of the lands, for the purpose of placing the same in the assessment roll, but which request the agent refused.

4th. That the said board were willing (should the

June Term
1854.

The State
vs.
Sup. of La
Fayette Co.
Supreme Court consider said description too uncer-
tain,) to make a correction by placing on the roll a
full, complete and accurate description, whenever the
same shall be filed by the said executor, with the
clerk of the board ; or if it be held incumbent on the
board so to do, they are willing to procure a more
full and complete description from the register's of-
fice, and place the same on the roll prior to the time
fixed by law for the sale of land for taxes.

To this return the relator demurred.

*James H. Knowlton* for the relator.

*By the Court,* SMITH, J. The return to the alterna-
tive writ issued in this case, is evasive and insufficient.

The Revised Statutes, chapter 15, furnish very full
and specific directions as to the manner in which as-
sessment rolls of each town shall be made out. The
assessor is required to set down in separate columns,
the names of taxable persons in the town or ward ;
the description of each tract or parcel of land to be
taxed ; the number of acres or parts of acres, unless
the land is divided into lots and blocks ; the cash
value of each parcel of land taxed ; the full cash
value of personal property, &c., and the total valua-
tion of all property taxed, real and personal.

Section 20, provides that " If the land assessed be
less, or other than a subdivision, according to the
United States survey, unless the same is divided into
lots or blocks, so that it can be definitely described,
by giving the boundaries thereof, or in such other
manner as to make the description certain."

Section 39 of the same chapter provides, that the
county board of supervisors, at their annual meeting
after the assessment rolls have been delivered to the

clerk of the board, " shall make such alterations in the description of any lands upon such roll, as may be necessary to render such description conformable to the requirements of this chapter, and if such description cannot be so altered, *they shall expunge the description of such lands, and the assessment thereon, from the assessment roll.*"

Here is a plain, simple duty, absolutely required of the board of supervisors, by the statute. The return neither states that the duty has been performed, nor any reason why it has not been done. No attempt has been made to correct the description of the lands mentioned in the relation, so as to render it conformable to the requirements of the statute, nor is it easily to be perceived how the same could be done by the board with the means at their command. The description of the lands in the assessment roll returned by the assessor, in scarcely any respect conforms to the requirements of the statute. There is no attempt to fix a valuation to any of the parcels, but only a gross sum of the whole, consisting of some seven distinct parcels. In a matter of so much importance as the assessment and collection of the taxes, something approaching to regularity and accuracy must be demanded. The statute must be obeyed. The respondents do not pretend that they could correct this assessment roll according to the requirements of the law. Their return is evasive and insufficient, and the peremptory writ of mandamus must be awarded.

Let the writ go.